UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CARLIELL et al., : | |
|     Plaintiffs, : | CIVIL ACTION NO. |
| : | 3:12-CV-1700 (JCH) |
| v. : | |
| : | |
| AMERICAN INVESTMENT : | SEPTEMBER 5, 2013 |
| EXCHANGE, LLC et al., : | |
|     Defendants. : | |

**RULING RE: DEFENDANT AMERICAN INVESTMENT EXCHANGE'S MOTION TO DISMISS (Doc. No. 18) AND PLAINTFFS' MOTION FOR AN EVIDENTIARY HEARING ON THE MOTION TO DISMISS (Doc. No. 24)**

**I.     INTRODUCTION**

Plaintiffs James Carliell and 7277 NA Private Investor XXIX, LLC bring this action against American Investment Exchange, LLC ("AIE"), 7277 NA Group, LLC ("Group I"), Douglas Ryan Clayton (also known as Ryan Clayton), Jill Pearlman, and Larry Lanzrath, alleging conversion, civil racketeering, violations of the Connecticut Unfair Trading Practices Act ("CUTPA"), unjust enrichment, and breach of contract.  AIE moves the court to dismiss the action as to AIE for insufficient service of process and lack of personal jurisdiction.  Plaintiffs move the court to hold an evidentiary hearing, arguing that factual disputes remain as to AIE's authorized agent for service.

For the reasons set forth below, the court **grants** AIE's Motion to Dismiss (Doc. No. 18) and **denies** plaintiffs' Motion for an Evidentiary Hearing (Doc. No. 24).

**II.    BACKGROUND**

    A.     Prosecution of this Case

Plaintiffs filed their Complaint (Doc. No. 1) in this court on November 30, 2012. Shortly thereafter, the court issued a summons to be served on each of the defendants. See Doc. No. 7.  Roughly three months later, in March 2013, plaintiffs filed with the

1

court affidavits of service dated March 1 and March 9 as to AIE and Clayton, respectively.  See Doc. Nos. 7 & 8.  No other certificates of service on the remaining defendants were filed at that time.

On April 9, the court ordered plaintiffs to show cause why their case should not be dismissed for failure to prosecute, failure to serve all defendants, and failure to file a motion for default entry, given that no appearance by the two defendants purportedly served and no further returns of service had been filed at the time.  See Doc. No. 9.  On May 7, two weeks after the deadline had passed for a response to the court's Order to Show Cause, plaintiffs moved for default entry.  See Doc. No. 10.  On May 14, plaintiffs also filed a final affidavit of service dated April 5 as to defendant Group I, which affidavit showed that service had been attempted but not effected.  See Doc. No. 14.

On May 17, the court again ordered plaintiffs to show cause why the case should not be dismissed.  See Doc. No. 15.  Specifically, the court directed plaintiffs to file a pleading representing the addresses for service of each of the defendants, the place of abode or business, and evidence of service of all required documents, including the Complaint.  See Doc. No. 15.  Plaintiffs' Response (Doc. No. 16) lists addresses for AIE, Group I, and Clayton.  As evidence of service, plaintiffs referred the court to the previously filed affidavits (Doc. Nos. 7, 8 & 14), AIE's Notice of Appearance on May 10 (Doc. Nos. 12 & 13), and Clayton's Answer to the Complaint (attached as Exhibit D to plaintiffs' Response).[1]  Plaintiffs' process server is represented to have made two

---

[1] Although Clayton's Answer to the Complaint was ostensibly served on plaintiffs' counsel by mail within the required 21 days, it was never filed with the court.  Nor has Clayton filed an appearance in this action.

2

attempts to serve Lanzrath, to no avail.  No mention is made of Pearlman.  Of the five defendants, only AIE has filed an appearance with the court.

   B. <u>Factual Dispute as to AIE's Registered Agent of Service</u>

  Plaintiffs raise a single factual issue regarding sufficiency of service—namely, whether National Registered Agents, Inc. ("NRAI") was AIE's registered agent for service on March 1, 2013.  According to the affidavit of service filed with the court, plaintiffs served "American Investment Exchange, LLC, c/o NRAI" by delivery into the hands of "Pam Adams, Corporate Operations Specialist."  <u>See</u> Doc. No. 7.  It is uncontroverted that NRAI was AIE's agent for service for part of the time between July 2007, when AIE was formed as an LLC under North Carolina law, and May 23, 2013, when AIE was administratively dissolved.  <u>See</u> Def. AIE's Mem. of Law in Supp. of AIE's Mot. to Dismiss ("AIE's Mem. Supp.") (Doc. No. 19) at 1-2.  It is uncontroverted as well that NRAI resigned as AIE's agent for service in September 2012.

  The factual dispute narrowly concerns whether NRAI resumed being AIE's agent for service after resigning in September 2012.  AIE alleges that NRAI did not and thus was not authorized to accept service on AIE's behalf on March 1, 2013.  <u>Id.</u> at 2.  Plaintiffs allege that on or about January 25, a Change of Registered Office Address form signed by NRAI accompanied AIE's public filings on the website of the North Carolina Secretary of State.  <u>See</u> Pls.' Opp'n to AIE's Mot. to Dismiss ("Pls.' Opp'n.") (Doc. No. 23) at 7.  It is undisputed that no such document appears there now.  Plaintiffs argue only that their professional process server had reason to believe in February 2013 that NRAI was, once again, AIE's agent for service.  <u>Id.</u>

  Citing the affidavit of service filed with the court, plaintiffs claim, further, that NRAI <u>accepted</u> service on AIE's behalf.  <u>See id.</u> at 7.  AIE has submitted two pieces of

counterevidence. The first is an affidavit of a representative of NRAI's parent company, Kenneth Uva. See Uva Aff. (Doc. No. 29-1). Uva attests that, while legal documents were accepted by an NRAI employee, NRAI returned the documents to plaintiffs on March 5, along with a cover letter explaining that NRAI had resigned as AIE's agent for service in North Carolina. See id. ¶¶ 7, 10-12. The second piece of counterevidence is the cover letter itself. See Supplemental Ex. E (Doc. 28-1). Both Uva's Affidavit and NRAI's cover letter deny that NRAI was AIE's agent for service on March 1. The date of the cover letter also suggests that plaintiffs had notice of this fact, if not before filing their first affidavit of service with the court on March 6, then shortly thereafter.[2]

## III.   STANDARD OF REVIEW

Sufficiency of service is a precondition for the court's exercise of jurisdiction over a party and, therefore, constitutes an interrelated ground on which to dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2). See Fed. R. Civ. P. 12(b)(2) & 12(b)(5); Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987); Davis v. Mara, 587 F. Supp. 2d 422, 424 (D. Conn. 2008). On a Rule 12(b)(2) motion, the plaintiff must show that the court possesses jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). District courts have "considerable procedural leeway" in deciding Rule 12(b)(2) motions and may accept affidavits alone, permit discovery, or conduct an evidentiary hearing. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).

---

[2] The court notes that NRAI's cover letter and Uva's Affidavit were filed with the court as supplemental exhibits on July 10, 2013 and July 15, 2013, respectively—after plaintiffs had already filed their Opposition, and AIE had filed its Reply. See Doc. Nos. 28 and 29. Hence, plaintiffs have not addressed the cover letter or the facts alleged in Uva's Affidavit.

4

The plaintiff must eventually prove the court's jurisdiction over a defendant by preponderance of the evidence, either at trial or at an evidentiary hearing. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). In the absence of an evidentiary hearing, however, the showing necessary to defeat a Rule 12(b)(2) motion challenging the court's jurisdiction over a defendant is considerably lower. Metro. Life, 84 F.3d at 566-67. Prior to discovery, the plaintiff need only provide legally sufficient allegations of jurisdiction. Id. at 566. Where the court decides the issue on affidavits alone, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade, 989 F.2d at 79-80.

## IV.   DISCUSSION

The Federal Rules of Civil Procedure provide, inter alia, for service to be made on a corporation, partnership, or other unincorporated association by: (1) following the law of service of the state in which the district court is located or of the state in which service is made; or (2) delivering a copy of the summons and complaint to the company's officer, managing or general agent, or other agent authorized by appointment or law to receive service. See Fed. R. Civ. P. 4(e)(1), (h)(1).

Because AIE is a North Carolina LLC, it is treated as a foreign LLC from the perspective of a federal court sitting in diversity in Connecticut. Hence, service should have been made on AIE pursuant to an applicable Connecticut long-arm statute,[3]

---

[3] Service on foreign entities is covered by two long-arm statutes in Connecticut. See Conn. Gen. Stats. §§ 52-59b (foreign partnerships and voluntary associations) & 33-929 (foreign corporations). Although neither specifically covers LLCs, and the Connecticut Supreme Court has yet to address the application to LLCs, the one district judge who has thoroughly analyzed the issue, Judge Kravitz, held that section 52-59b, rather than section 33-929, applies to foreign LLCs under Connecticut law. Austen v. Catterton Partners V, LP, 729 F. Supp. 2d 548 (D. Conn. 2010).

pursuant to the North Carolina law of service on domestic LLCs, or on an officer, a general or managing agent, or another agent authorized by appointment or law to receive service. Ordinarily, service must be made within 120 days of filing a complaint. See Fed. R. Civ. P. 4(m). Hence, under Rule 4(m), plaintiffs should have served all of the defendants in this case on or before March 30.[4]

AIE argues that the court lacks personal jurisdiction because neither NRAI nor Clayton was authorized to accept service on its behalf, and the plaintiffs did not follow the forms of service otherwise permitted under the Federal Rules of Civil Procedure and applicable state law. See AIE's Mem. Supp. at 5-8; Def. AIE's Reply to Pls.' Opp'n ("AIE's Reply") (Doc. No. 25) at 1-3. Plaintiffs argue that service on Clayton satisfies the service on "a managing or general agent" provision of Rule 4(h)(1)(B). See Pls.' Opp'n at 5-6. In the alternative, plaintiffs argue that the court should deem service sufficient because AIE had actual notice of the pending litigation and was not prejudiced by any defect in service. See id. at 8-9.

A.  Service on Douglas Ryan Clayton

There is no dispute that in-hand service on Clayton on March 9 was sufficient as to Clayton himself. The issue is whether such service was sufficient as to AIE. The court determines that it was not.

According to Clayton's Answer to the Complaint, Clayton resigned as manager of AIE on August 10, 2011. He was thus not authorized to receive service on AIE's behalf over two years later, on March 9, 2013. Moreover, plaintiffs received Clayton's Answer

---

[4] The attempted service on Group I on April 5 would thus have been untimely, even had service actually been effected—which it was not. Group I seems still not to have been served in this case and has yet to file an appearance with the court.

6

in late March and knew or should have known then that service on him did not suffice as to AIE. See Pls' Opp'n at 2.[5]

As plaintiffs rightly note, Clayton is still listed as a manager of AIE on the website of the North Carolina Secretary of State. See id. at 6. Clayton's failure to file a resignation notice with the Secretary of State, however, does not render him amenable to service on AIE. North Carolina adheres to the general rule in corporate law that an officer's resignation takes effect on the date communicated, unless the written resignation specifies a different date. See N.C. Gen. Stat. § 55A-8-432; Fletcher, Cyclopedia Corporations § 347 (2012).[6] Of course, an officer may not resign to evade service of process on the entity. See 2 Fletcher, Cyclopedia Corporations § 345 (2012). Where resignation is not for that purpose, however, service cannot ordinarily be made on an ex-officer. Id. Notwithstanding plaintiffs' insinuations regarding AIE's "pattern of making covert changes to its procedures and operating structure," see Pls.' Opp'n at 7, plaintiffs do not allege that Clayton's resignation in August 2011 was either erroneous or undertaken to evade service on AIE in this action, which was commenced in November 2012.

---

[5] In its Reply brief, AIE argues, alternatively, that even if Clayton had been AIE's manager at the time of service, service on him did not effect service on AIE because plaintiffs only intended to serve him in his individual capacity, and the affidavit of service filed with the court is expressly for service on an individual. See AIE's Reply at 1-3. Plaintiffs' intent, however, is immaterial in determining whether in-hand service on Clayton was sufficient as to AIE. AIE points to no statutory language requiring in-hand service on Clayton as an individual to be distinct from service on him as an officer or agent of AIE. On the contrary, under the Federal Rules of Civil Procedure, Connecticut's statutory law of service, and North Carolina's Rules of Civil Procedure, delivery of the summons and complaint to AIE's present manager is an authorized form of service on an LLC. See Fed. R. Civ. P. 4(h)(1)(B); Conn. Gen. Stat. § 52-57; N.C. R. Civ. P. § 1A-1, Rule 4(j)(6). The issue, then, is only that Clayton was not AIE's manager.

[6] Although not strictly a corporation, an LLC is a "statutory form of business organization that combines characteristics of business corporations and partnerships." Hamby v. Profile Products, L.L.C., 361 N.C. 630, 636 (2007). The rule concerning a corporate officer's resignation is appropriate to the manager of an LLC, absent some provision to the contrary in the LLC's operating agreement.

In light of Clayton's resignation, the court thus determines that in-hand service on him did not constitute a valid form of service on AIE.

B.     Service on NRAI

Two facts regarding NRAI are clear:  (1) plaintiffs served NRAI in March 2013, within 120 days of filing the Complaint; and (2) NRAI resigned as AIE's registered agent for service in North Carolina in September 2012.  This second fact is readily attested by the resignation form available through the website of the North Carolina Secretary of State.  See Ex. D to AIE's Mem. Supp. (Doc. No. 19-4) at 3.  Plaintiffs argue, nevertheless, that their process server had reason to believe in February 2013 that NRAI was, once more, AIE's agent for service.  See Pls.' Opp'n at 7.  However, the basis for this belief—namely, a change-of-address form for NRAI that allegedly accompanied AIE's public filings—is equivocal at best.[7]

Plaintiffs move the court, therefore, to hold an evidentiary hearing to resolve what they call "real and substantial issues . . . as to whether NRAI was the proper agent for service on AIE."  See Pls.' Mem. in Supp. of Mot. for Evidentiary Hr'g (Doc. No. 24-1) at 2.  In particular, plaintiffs seek to elicit testimony both from a representative of the North Carolina Secretary of State and from Pam Adams, the NRAI Corporate Operations Specialist actually served by plaintiffs.  In deciding a Rule 12(b)(2) motion without a full-blown evidentiary hearing, the court already takes plaintiffs' factual allegations as true and construes disputed factual issues in the plaintiffs' favor.

---

[7] No such document now appears on the website of the North Carolina Secretary of State.  In the email from the process server cited by the plaintiffs, the process server states:  "With regard to American Investment Exchange LLC, the information on the NC Corporations site, seemed to indicate that NRAI is once again agent for this entity after resigning 9/6/2012."  See Ex. D to Pls.' Opp'n (Doc. No. 23-4) at 1 (emphasis added).  By the process server's own account, NRAI's change-of-address form was also missing the second page listing the entities represented.  Id.

8

Assuming that NRAI's change-of-address form appeared with AIE's public filings, plaintiffs still knew or should have known within the 120-day period that NRAI was not AIE's agent for service.  First, among AIE's public filings, there was NRAI's resignation and no subsequent change of agent or annual report designating NRAI or any other entity or individual as the agent for service.  Second, the process server acknowledged NRAI's resignation and admitted that its belief as to NRAI's current status was based on a form that was <u>missing</u> the list of represented entities.  <u>See</u> Ex. D. to Pls.' Opp'n (Doc. No. 23-4) at 1.  Finally, in early March, NRAI unequivocally alerted plaintiffs to the fact that it was no longer AIE's agent for service.  <u>See</u> Uva Aff. at ¶ 11.  Presumably, even with plaintiffs' late start in prosecuting this case, there was time to correct the server's error within the time allowed by Rule 4.

Judge Kravitz's words are certainly true:  "Service of process is not intended to be a game of hide and seek or cat and mouse."  <u>Carillo v. Hagerty</u>, No. 3:05CV1417 (MRK), 2006 WL 2165679 (D. Conn. July 31, 2006).  Plaintiffs, however, do not appear to be victims of an elusive defendant.  The North Carolina Secretary of State's website lists an entity's registered agent for service, if any.  In AIE's case, there is none.  Regardless of whether NRAI's change-of-address form accompanied AIE's public filings in February 2013, the cover letter from NRAI with the returned summons should have prompted plaintiffs to realize that there was defective service as to AIE.

The facts in dispute, then, are not significant for the determination of whether service on NRAI was sufficient as to AIE.  Plaintiffs do not allege collusion between AIE and the North Carolina Secretary of State.  And their vague intimation of foul play does not give rise to the need for an evidentiary hearing.  Evidence available to plaintiffs both

9

before the attempt to serve AIE through NRAI and, more importantly, after that attempt indicated that NRAI was not AIE's agent for service.  Hence, even crediting plaintiffs' account, the court determines that service on NRAI was inadequate as to AIE.

### C. Statutory Agent for Service

Where, as here, no agent for service is appointed, Connecticut law permits service on a foreign LLC by a set procedure through the Connecticut Secretary of State.  See Conn. Gen. Stat. § 52-59b(c); Austen, 729 F. Supp. 2d at 558.  North Carolina law provides a similar procedure for service on a domestic LLC that has no registered agent for service.  See N.C. Gen. Stat. § 57C-2-43(b).  In these circumstances, the Secretary of State either of Connecticut or of North Carolina could have acted as AIE's statutory agent for service.  Plaintiffs could have availed themselves of these procedures designed to effectuate service on an LLC that has otherwise failed to appoint or maintain a registered agent for service in the state.  That they did not do so is undisputed.

### D. Actual Notice

As a last resort, plaintiffs argue that AIE had actual notice and was not prejudiced by any defect in service of process.  The Second Circuit cases cited by plaintiffs to support that claim, however, are inapt to the present case.  See Pls.' Opp'n at 8-9 (citing S.E.C. v. Tome, 833 F.2d 1086 (2d Cir. 1987); Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176 (2d Cir. 1979)).  Here, insufficient service of process was not the result of unusual defendants whose identities were unknown or who were otherwise difficult to serve by reasonably diligent efforts.  Nor is this a case of technical noncompliance in choosing a substitute means of service otherwise reasonably calculated to apprise a defendant of the action.  Plaintiffs served NRAI on March 1, despite evidence that NRAI

had resigned as AIE's agent for service. NRAI also informed plaintiffs shortly thereafter of the error. Plaintiffs served Clayton on March 9. Within twenty-one days of being served, Clayton pleaded in his Answer that he was no longer with the company. See Clayton's Answer at ¶ 6. Whether AIE learned of the action through NRAI or Clayton, service on a resigned officer and a resigned agent for service was not reasonably calculated to apprise AIE of the pending litigation.

The fact that plaintiffs first attempted service on AIE three months after the commencement of this action did not help. Yet, despite plaintiffs' dilatoriness, there was time to serve AIE in other ways within the 120 days. There is no question that authorized procedures exist through the Connecticut Secretary of the State as well as the North Carolina Secretary of State to provide for serving defendants without a registered agent for service. It is unclear why plaintiffs did not make use of these procedures or employ other means reasonably calculated to notify the defendant.[8]

The fact that AIE filed an appearance in this action on May 10—well after the 120-day deadline for being served and weeks after the latest possible date on which a properly served party could timely file responsive pleadings—scarcely stands as proof of adequate service of process. To deem service sufficient as to AIE would render AIE the delinquent party, for its failure to answer the Complaint within twenty-one days. See Fed. R. Civ. P. 12(a)(1). Plaintiffs have not presented the court with a basis in law or equity to warrant such a departure from the dictates of proper service.

---

[8] In their Response to the court's second Order to Show Cause, plaintiffs included the last known address for AIE. See Doc. No. 16. Yet they have nowhere demonstrated even that they delivered the summons and Complaint to AIE at that address.

**V.    CONCLUSION**

For the reasons stated above, the court **grants** AIE's Motion to Dismiss (Doc. No. 18) and **denies** plaintiffs' Motion for an Evidentiary Hearing (Doc. No. 24). The Complaint is hereby dismissed, without prejudice,[9] as to defendant AIE.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of September, 2013.

                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge

---

[9] The court is aware of no applicable statutes of limitations that would prevent plaintiffs from re-filing the present Complaint, whether in this court or in another venue more apt to have jurisdiction over the named individual defendants as well as the defendant LLCs.

    AIE does argue, incorrectly, that it is immune to service now that it has been administratively dissolved by the North Carolina Secretary of State. Were the argument not meritless, it would give the court pause in dismissing the instant action against AIE. However, like other states, North Carolina provides that a dissolved corporation remains subject to suit and amenable to service of process. See N.C. Gen. Stat. § 55-14-05(b)(5); Sisk v. Old Hickory Motor Freight, 222 N.C. 631, 634 (1943); Baker v. Rushing, 104 N.C. App. 240, 250 (1991) ("[D]issolution does not terminate the corporation's existence nor its amenability to suit.").